UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DONALD GIBSON | CIVIL ACTION |
| VERSUS | NO. 10-1641 |
| ILLINOIS CENTRAL RAILROAD COMPANY | SECTION "S" (3) |

## ORDER

On September 21, 2011, defendant's Motion for Protective Order [Doc. #27] came on for oral hearing before the undersigned. Present were Robert Marcus on behalf of plaintiff and David Kelly on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition, the case law and the parties' oral arguments, the Court rules as follows.

**I.     Background**

The complaint alleges as follows. On June 25, 2007, plaintiff Donald Gibson was working at the Geismar Yard in Ascension Parish, Louisiana, owned by defendant Illinois Central Railroad Company ("IC" or "defendant"). Plaintiff was operating a locomotive engine at or near Track No. 9 at the Geismar Yard. Plaintiff was injured when railroad cars were directed onto Track No. 9, causing a collision with his train. The collision caused plaintiff to bump his head on the console in front of him and to strike the small of his back on the front edge of the foam-padded seat.

Plaintiff sustained injuries to his neck, back and left leg.   Nearly three years after the incident, plaintiff sued IC under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*

On August 22, 2011, plaintiff propounded on defendant two notices of deposition under Federal Rule of Civil Procedure 30(b)(6), returnable on September 1, 2011.  In the first deposition notice, plaintiff listed the following as deposition topics:

> 1) Radio communication devices, radio rules, radio policies, radio procedures and radio frequencies/channels used;
> 2) Customs and practices of the use of radio communication between locomotive crews;
> 3) Conductor's job duties and responsibilities;
> 4) Respective responsibilities of conductor and locomotive engineer in use of radio in receiving, planning and executing their assignments.

In the second deposition notice, plaintiff also listed the following as topics:

> 5) Yardmaster job duties and responsibilities;
> 6) Rules, policies, procedures and protocols that apply to yardmasters;
> 7) Rules, policies, procedures and protocols of yardmasters to protect a crew assigned to and/or working on a track; and
> 8) Rules, policies, procedures and protocols of yardmasters in controlling the movement of trains in a yard.

IC objected to, *inter alia*, the overbreadth of the deposition topics.  Counsel for both parties met and conferred and attempted to narrow the deposition topics, to no avail.

## II.    The Parties' Contentions

### A.    Defendant

Citing the general case law for a protective order, IC argues that the deposition notice must describe with reasonable particularity the matters for examination.  Based on the specific matters for examination, the corporation must then choose a representative to testify on its behalf.  IC contends that courts in this district have not balked at quashing Rule 30(b)(6) notices that are too broad, vague or ambiguous to properly describe the matters for examination.

IC argues that the eight deposition topics above are overbroad on numerous grounds. First, they are not limited to the Geismar Yard. IC contends that it can not produce a corporate representative to, for example, testify as to the rules, policies and procedures at every IC yard in the United States. IC also contends that there is no temporal limitation.

Second, IC notes that the alleged accident occurred during yard-switching operations. IC thus contends that only the rules, policies and procedures applicable to yardmasters regarding yard-switching operations are relevant. IC argues that rules, policies and procedures generally applicable to all yardmasters and all of their duties are irrelevant.

IC asks the Court to limit the deposition topics to the following:

1) System-wide rules, regulations and policies regarding radio use in connection with yard switching, and devices provided, frequencies/channels used for yard switching work at Geismar;
2) Customs and practices referable to radio use between switch crews at Geismar;
3) System-wide job duties and responsibilities applicable to conductors in connection with yard switching activities;
4) Respective responsibilities of conductors and locomotive engineers regarding radio communications with each other;
5) Duties and responsibilities of yardmasters at Geismar in 2008;
6) System-wide rules, policies and procedures applicable to yardmasters regarding yard switching activities;
7) System-wide rules, policies and procedures applicable to yardmasters regarding the protection of crews involved in yard switching activities; and
8) System-wide rules, policies and procedures applicable to yardmasters regarding the control of movements of trains during yard switching.

**B.     Plaintiff**

Plaintiff contends that liability in FELA lawsuits can be established by showing a violation of a safety law or regulation; a violation of one of the railroad's safety, operating rules or customs and practices; and failure to enforce or enact railroad rules. Plaintiff argues that IC is bound by numerous federal safety laws and regulations. Plaintiff also notes that IC has enacted hundreds of

3

rules that address safety in the operations of its trains and equipment, the supervision of its employees and general safety rules.  These rules allegedly apply throughout IC's entire system.  Plaintiff maintains that a violation of any of these rules may be used as evidence of negligence in a FELA lawsuit.

Plaintiff argues that because IC applies its radio communication rules system-wide, the deposition topics are relevant and material to the litigation.  Plaintiff also contends that failing to enforce the standard system-wide radio rules may be evidence of negligence.  That Geismar Yard may have policies and procedures different from other IC yards, plaintiff contends, may be evidence of negligence. Plaintiff argues that Geismar Yard's customs and practices may be considered unsafe when compared to another locale or the general rules.

Plaintiff maintains that limiting the deposition topics to yard-switching operations will confine cross-examination when in reality this lawsuit concerns defendant's violation of railroad safety rules, switching rules, rules applicable to a conductor and rules applicable to a yardmaster.  Plaintiff notes that the yardmaster here performed many functions and did not just oversee yard-switching operations.

Plaintiff argues that he has described the deposition topics with "reasonable particularity" and need not describe them "as specific[ally] as possible."   Plaintiff argues that this lawsuit does not involve simple "yard switching activities at Geismar."  Plaintiff contends that yard switching itself encompasses the coordination of trains, coordination of crews, operation of the radio, operation of the switches and operation of safety appliances.  Plaintiff notes that these functions cut across numerous positions at the railroad, from a brakeman to a superintendent and also cut across many, if not all of, IC's rules for operation.  Plaintiff argues that this case involves IC's violation of the

radio rules, IC's violation of numerous safety rules, and IC's custom of ignoring the system-wide rules in favor of local procedures that are unsafe.

Plaintiff argues that IC's request to limit the deposition to one witness is untenable given that Rule 30(b)(6) provides that IC must produce "one or more" persons who consent to testify on its behalf. Indeed, this is the reason why plaintiff propounded two deposition notices, one for a corporate representative who can testify as to conductors and one who can testify as to a yardmaster.

### III.   Law and Analysis

Rule 26 of the Federal Rules of Civil Procedure governs the issuance of protective orders. It provides, in pertinent part,

> [u]pon motion by a party or by the person from whom discovery is sought ... and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... If the motion for a protective order is denied in whole or in part, the court, may, on such terms and conditions as are just, order that any party or other person provide or permit discovery.

Fed. R. Civ. P. 26(c).

The decision to enter a protective order is within the court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *See In re: Terra Int'l, Inc.*, 134 F.3d 202, 306 (5th Cir. 1998) (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)).

For the reasons outlined below, the Court finds that defendant has demonstrated good cause for the issuance of a protective order to a certain extent. The Court specifically finds that, as worded, the deposition topics drafted by plaintiff are overbroad. For example, while the Court

recognizes that conductors and yardmasters have many duties and responsibilities at railroad yards, not all of those duties and responsibilities are relevant, and questions concerning such duties and responsibilities are not reasonably calculated to lead to the discovery of admissible evidence. The Court thus finds that limiting the deposition topics to yard-switching operations – the operations that allegedly caused plaintiff's injuries – reduces the overbreadth of the deposition topics here. In certain instances as well, the Court finds that limiting the topics to the Geismar Yard is appropriate to eliminate their overbreadth. As an example, radio frequencies and channels used by yardmasters at railroad yards other than the Geismar Yard are not likely to lead to the discovery of evidence admissible to support plaintiff's claims here.

Combining the deposition topics as drafted by plaintiff and defendant, the Court re-drafts the deposition topics as follows:

> 1) (a) System-wide rules, regulations and policies regarding radio use in connection with yard-switching, and (b) devices provided, frequencies/channels used for yard-switching work at the Geismar Yard only;
> 2) Customs and practices referable to radio use between switch crews system-wide and at the Geismar Yard;
> 3) System-wide job duties and responsibilities applicable to conductors in connection with yard-switching activities;
> 4) Respective responsibilities of conductors and locomotive engineers regarding radio communications with each other;
> 5) Duties and responsibilities of yardmasters at the Geismar Yard in connection with yard-switching operations;
> 6) System-wide rules, policies and procedures applicable to yardmasters regarding yard-switching activities;
> 7) System-wide rules, policies and procedures applicable to yardmasters regarding the protection of crews involved in yard-switching activities;[1] and
> 8) System-wide rules, policies and procedures applicable to yardmasters regarding the control of movements of trains during yard switching.

---

[1] The Court notes that at the oral hearing, plaintiff agreed to topic No. 7 as drafted by defendant.

The Court further finds that a temporal limitation is necessary to each deposition topic and sets that temporal limitation as the year in which the accident occurred.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that defendant's Motion for Protective Order [Doc. #27] is GRANTED IN PART as outlined above.

New Orleans, Louisiana, this 11th day of October, 2011.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**